MAX N. TOBIAS, Jr., Judge.
hOn 29 July 2004, the defendant, Darnell Lewis (“Lewis”), was charged by indictment with: three counts of aggravated rape, violations of La. R.S. 14:42; three counts of aggravated crime against nature, violations of La. R.S. 14:89.1; and three counts of aggravated burglary, violations of La. R.S. 14:60. Two counts of each of the crimes involved one victim. On 3 September 2004, he pleaded not guilty. On 22 February 2005, the state amended two counts of aggravated rape to forcible rape and nolle prosequied the third count of aggravated rape and the rest of the charges.[1] The defendant pleaded guilty under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to two counts of forcible rape. He waived delays and was sentenced on each count to twenty years at hard labor with credit for time served; the first two years were to be served without benefit of probation, parole, or suspension of sentence, and the sentences were to run | ¡.concurrently.
According to the plea bargain agreement handwritten on the back of the waiver of rights form, it was agreed that the sentence would be twenty years on each count to run concurrently; that Lewis would be given credit for time served from 19 February 1991; that there would be no multiple bill or other sentence enhancements; that all other charges would be refused; and that all other counts in the action would be dismissed. The state stipulated and warranted in consideration for the plea that there were no charges pending or contemplated for any crime in Orleans Parish, known or unknown, allegedly occurring before 22 February 2005. The state further stipulated that Lewis would not make the plea voluntarily unless the state granted him immunity from any other charges, known or unknown, that are based on acts occurring before 22 February 2005.
The 19 April 2005 minute entry indicates that the state appeared and argued that *102 Lewis was not entitled to good time credit pursuant to La. R.S. 15:571.3. On 9 May 2005, the state filed a multiple bill. On 19 May 2005, Lewis filed a motion to quash the multiple bill. On 2 June 2005, the trial court granted the motion and quashed the multiple bill. The state appealed. The notice of appeal in case number 450-673 was signed 8 June 2005, setting a return date of 2 July 2005.[2]
13Lewis pleaded guilty to two counts of forcible rape; therefore, the facts are not known. According to the state, DNA tests on “cold cases” identified Lewis as the possible perpetrator in the rapes of two women in the 1980s, and he was charged by indictment with three counts of aggravated rape, three counts of aggravated crime against nature, and three counts of aggravated burglary.
ERRORS PATENT
Because this is an appeal by the state, no review of the record for errors patent is necessary.
ASSIGNMENT OF ERROR NUMBER 1
The state argues that the trial court erred by quashing the multiple bill because it was entitled to specific performance of the terms of the negotiated plea. According to the state, on the morning of trial in case number 430-648, the case with similar charges where Lewis was granted a new trial and the charges were nolle prose-quied and reinstituted, it inquired about the availability of a plea, and Lewis expressed interest. The state claims that it offered a twenty-five year sentence (which it thought would keep the defendant in prison until he was sixty) in exchange for reducing the aggravated rape counts to forcible rape, including the aggravated rape charges in case number 450-673. The defense countered that Lewis would not agree unless the sentence was twenty years and he would be out of jail by the age of fifty-five. The state agreed. Then Lewis listed other | conditions, which were placed on the waiver of rights form. The state alleges that “good time” was never discussed, and the state thought, as well as the trial court, that the defendant would serve the twenty years pursuant to La. R.S. 15:571.3(D). The state points out that there is no reference to “good time” during the guilty plea proceeding and sentencing. The state alleges that afterward it learned that defense counsel had included the possibility of good time in the discussions with *103 Lewis, who viewed the twenty years as a ceiling.
According to the state, in April 2005 it was informed by the Department of Corrections (“DOC”) that Lewis was eligible for good time benefits. The state then filed a multiple bill in order to enforce the plea agreement that Lewis serve an additional six years (in addition to the fourteen he had served), but the trial court granted his motion to quash it. The state claims that the DOC would not apply the current version of La. R.S. 15:571.3(D), which prohibits good time benefits due to Lewis’ prior conviction for a crime of violence, because of ex post facto considerations (applying a version of the statute not in effect at the time the defendant committed the offenses). The state cites La. C.C. art. 1949 and argues that its consent to the agreement or contract was vitiated by an error concerning a cause without which the obligation would not have been incurred, and that cause was known or should have been known to defense counsel. Therefore, the state claims that Lewis should be compelled to serve the full twenty-year sentence, and the state should be allowed to compel specific performance by filing a multiple bill to block his early release due to good time credits.
| ¡According to the hearing transcript, on 22 February 2005 the trial court went through the Boykin rights and set out that Lewis was pleading guilty because it was in his best interest. The court went through the requirement of blood and saliva testing and sex offender registration. The court then read the plea bargain agreement from the back of the waiver of rights form, which included a statement that there would be no multiple bill or other sentence enhancements. The trial court then sentenced Lewis to twenty years, to run concurrently with any and all sentences he might be serving, with credit for time served.
According to the 2 June 2005 transcript, at the hearing on the motion to quash, defense counsel stated to the court: “The agreement between the parties, and there was an agreement was [sic] that Mr. Lewis would get a 20-year sentence and spend no more than twenty years. That was a maximum; that was a ceiling to what would happen.” The trial court declared: “Right. That was my understanding.” Defense counsel stated: “It was not a floor. There was no request by the DA’s Office for — and I don’t even think it’s legally possible-for the Court to say that he could not get good time. In fact we cite several cases that good time is up to the Department of Correction.” Defense counsel said that it is a public policy decision that the DOC has the ability to award good time in order to maintain discipline inside the prison system. Counsel noted that there had been a conversation among the attorneys involved in the case during which “the sentiment was that no one knew whether or not he would be eligible for certain as to god [sic] time; [sic] but we certainly knew the possibility existed.” Counsel said that it was inaccurate for the state to say that a flat sentence was part of the negotiations. The trial court then stated: “That’s what I expected though, | fifrankly, Mr. Schroeder. [sic] expected that it would be 20 years and that he would be [sic] 20 years.”
The court went on to note that the argument at the hearing was altogether different. Defense counsel stated that he understood that the reason for the hearing was the fact that the prosecutors who negotiated the plea “may have been under the mistaken impression as to the law that he would be eligible for god [sic] time.” Counsel argued that he was going to trial the day that the plea bargain was negotiat *104 ed. He had not been armed with research on good time rules. Counsel said that the state apparently knew that Lewis would not serve the entire twenty years because the state insisted that the sentence include that the first two years would be served without benefit of probation, parole, and suspension of sentence. Counsel argued that perhaps disgruntled victims or issues in the District Attorney’s Office precipitated the state’s attempt to revisit the 22 February 2005 plea bargain agreement. Counsel stated that he and the prosecutors spent half a day to make sure that the agreement was clear and unambiguous and then read the agreement into the record. Defense counsel argued that the state had thirty days under La. C.Cr.P. art. 881.1 to revisit the sentencing. Counsel also said that the state had not contradicted his argument that a unilateral mistake as to the law did not vitiate consent. Counsel stated that the court correctly quashed, the multiple bill.
The trial court asked the state if Mr. Goines of the DOC had been contacted again after his initial statement that Lewis was eligible for good time. The court noted that it thought that Lewis had a prior conviction that would have flattened out his time. The state said that Mr. Goines had called the day before and once again stated that under the DOC’s interpretation Lewis was eligible for good time, and that was the final interpretation. The 17court noted that Mr. Goines had been in error many times before, but the state countered that it had no recourse for this error. The trial court then stated that it had to quash the multiple bill.
The prosecutor argued that during the plea negotiations defense counsel never directly or indirectly communicated to him that there was the possibility of good time. The negotiations centered on whether Lewis would be released at fifty-five or sixty years of age. The prosecutor declared that he never indicated to anyone that good time was available because the statutes on their face indicated that no good time was available. Once again the court declared that the DOC appeared to be wrong, but the state noted that its only vehicle was the filing of the multiple bill so that Lewis would be sentenced as a multiple offender. The court responded: “I don’t think I can do that. I don’t think I can do that.” The state asked that it be allowed to finish its argument.
The prosecutor noted that consent is necessary for a valid contract, and problems with plea bargain agreements are litigated as contracts. The state argued that an error of fact or law could vitiate consent. The prosecutor contended that “the only reason we entered into this deal, this plea agreement was for Mr. Lewis to remain incarcerated an additional six years till [sic] approximately 55 years of age which would be the 20year [sic] sentence.” The prosecutor argued that a mistake of fact or law could vitiate consent if the other side had a reason to believe that there may in fact be an error. The state contended that if defense counsel was discussing the possibility of parole with the defendant as part of the plea negotiations, then that was a bargaining chip of which the state was not informed. The state argued that defense counsel had an obligation to. tell the prosecutor and the | scourt. The court interrupted and noted that the law firm of Jones, Walker conducts negotiations all the time.
The state began to say again that Lewis was expected to serve the entire sentence. The court noted that it had expected it to be a twenty-year sentence. The state indicated that it had made concessions in the case in order to require Lewis to serve six more years. The state argued that if he was to serve less than six years, “that *105 should have been something that should have been disclosed, and we could have done whatever we could have done to confirm it.” The trial court stated: “I don’t think they had a responsibility to disclosed [sic] that even if they thought that, and even if they discussed that with their client, Val. [sic] I don’t think they had an obligation to deal with that.” The prosecutor noted that he was not alone during the negotiations; another prosecutor was also present. He stated:
We wish we could claim to be so smart as to know how the DOC was going to interpret good time. We had no idea. We were uncertain about it. We only knew that we were getting for Mr. Lewis what we put in that plea agreement was maximum and yes, he could possibly get out early. It could be via parole, it could be via good time. It could be via a change in the good time law that occurs 2 months after, way after the settlement agreement. We had no idea. We were insuring a maximum of—
The court interrupted: “When Act 138 was enacted, I mean it became immediately....” Defense counsel argued that the law was clear under State v. Gauthe, 98-1995 (La.12/18/98), 731 So.2d 273,[3] that even if counsel had known, it was not counsel’s responsibility to tell the state or the court. Defense counsel argued that even if the prosecutor mistakenly believed that good time would not apply to the defendant, that unilateral mistake of the law did not vitiate consent. Counsel noted that the agreement that there Lwould be no multiple bill was read by the court into the record. The state argued that the only consideration for the agreement was that Lewis would serve six more years until he was fifty-five years of age. The state argued that defense counsel was obligated to tell the state that he did not think that Lewis would have to serve the six years. The trial court again stated that it did not think that defense counsel had such an obligation, and quashed the multiple bill.
Defense counsel noted that during the negotiations he had always said that his client would not agree to serve more than twenty years (that was a ceiling), and his uncertainty as to the applicability of good time was honestly communicated to the state. The trial court again stated that it thought that Mr. Goines at the DOC was wrong and that Lewis’ time should be flat time. Defense counsel then stated that after researching the issue after the guilty plea and sentencing, the defense concluded that the DOC’s assessment was correct, and Lewis was eligible for good time.
The hand-written agreement on the back of the waiver of rights form provided: “20 years concurrent on each count; credit for time served fm: Feb. 19, 1991; no multiple bill or other sentence enhancements; all other pending charges refused; all other counts in this action dismissed.”
In determining the validity of plea bargain agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant’s constitutional right to fairness may be broader than his or her rights under contract law. State v. Givens, 99-3518, p. 14 (La.1/17/01), 776 So.2d 443, 455; State v. Louis, 94-0761, p. 7 (La.11/30/94), 645 So.2d 1144, 1148, citing State v. Nall, 379 So.2d 731 (La.1980). A plea bargain agreement requires the consent of the state and|10the defendant. Error, fraud, or duress may vitiate consent. La. C.C. art. 1948; State v. Wolfe, 99-0389 (La.App. 4 Cir. 4/19/00), 761 So.2d 596, 599, citing State v. Lewis, 539 So.2d 1199, 1204 (La.1989). Error vitiates consent *106 when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949; State v. Monroe, 99-1483, p. 5 (La.App. 4 Cir. 3/22/00), 757 So.2d 895, 898.
Although the state argues that it agreed to significant concessions in the plea bargain in exchange for Lewis to serve an additional six years for a total of twenty years, it provides no documentation to support that claim. Defense counsel claims that the state entered into the plea agreement because the trial court denied its motion for a continuance and a witness was unavailable. In fact in its brief the state concedes that several days before the second trial, one of the two victims, who resided out of state, informed the prosecutor that she refused to appear for trial; therefore it inquired as to whether the defendant was interested in a plea bargain. The state argues that Lewis’ failure to serve the entirety of the twenty-year sentence constitutes a breach of the plea bargain, but it cannot now show where the defendant agreed to serve the full twenty-year sentence. Although the state claims that it seeks specific performance of the negotiated deal by filing a multiple bill, it did not seek to reform the agreement or to clarify the agreement and the sentence within thirty days of the sentencing. Although the agreement was very detailed, it did not mention “good time” or the ineligibility for “good time” credit, but the state claims good time eligibility was a crucial part of the plea. The plea bargain clearly indicated that the state agreed not to multiple bill the defendant.
InDefense counsel argues that the state’s unilateral mistake as to the law does not vitiate consent under La. C.C. art. 1950. Citing State v. Gauthe, supra, counsel quotes the Louisiana Supreme Court’s pronouncement that “no provision of law requires either the court or defendant to inform the state of the existence and nature of statutes on early release ....” In Gauthe the Court also noted that no ambiguity exists in the plea colloquy and no extrinsic evidence was required for its interpretation, concluded that the state had not made a showing to justify disturbing the finality of the convictions, and ordered the district court to dismiss the state’s motion for revocation or reformation of the guilty plea. Here the state did not use such a motion, but instead filed a multiple bill to prevent Lewis from being released before serving twenty years. Yet its arguments relate to the reformation of the plea bargain agreement.
The state argues that the prosecutor believed that Lewis was not eligible for good time, and that belief was based on the current version of La. R.S. 15:571.3(D), which provides: “Diminution of sentence shall not be allowed an inmate in the custody of the Department of Public Safety and Corrections if the instant offense is a second offense crime of violence as defined by R.S. 14:2(13).” The state notes that its reliance on that version was misplaced because the DOC has determined that the current statute, which would deny Lewis good time eligibility, was not in effect at the time of the offense and would be an ex post facto application of the law. The state contends that the prosecutor’s consent was vitiated by that error, which concerned a cause without which the obligation would not have been incurred, and that cause was known to defense counsel, who discussed with | iathe defendant the possibility of good time release.[4] At the hearing on the *107 motion to quash the multiple bill, defense counsel told the trial court that there had been a conversation involving the attorneys on the case, and no one knew whether Lewis would be eligible for good time, but counsel felt that there was a possibility of good time. Counsel told the court that he had not researched the law pertaining to good time eligibility before the scheduled trial date when the plea bargain was negotiated, and he did not know whether Lewis would be eligible to earn good time. Even if state error existed as to good time eligibility, the error did not vitiate its consent to the plea bargain. According to the plea bargain, the state agreed not to multiple bill the defendant.
Therefore, we conclude the trial court properly granted Lewis motion to quash the multiple bill.
CONCLUSION
The trial court’s ruling granting Lewis’ motion to quash the multiple bill is affirmed.

AFFIRMED.

. According to the guilty plea and sentencing minute entry in case number 450-673, the state amended counts 1 and 2 of the indictment from aggravate rape to forcible rape and nolle prosequied the third count of aggravated rape. Lewis then pleaded guilty to amended counts 1 and 2. However, he was charged with aggravated rape in counts 1, 4, and 7, and the indictment indicates that the state amended all three counts, and the prosecutor did not write nolle prosequi on the third count of aggravated rape. Nonetheless, the 22 February 2005 guilty plea and sentencing transcript indicates that Lewis pleaded guilty to two counts of forcible rape, and the state agreed that all other counts in the case would be dismissed and all other pending charges would be refused.

. The notice of appeal listed case numbers 430-648 and 450-673, and Lewis pleaded guilty in both cases on 22 February 2005; however, the record in case number 430-648 has not yet been lodged in this court. In its brief the state noted that it had received only the record in 450-673, but the appeal related to case number 430-648 as well. The state also noted that defense counsel's 22 April 2005 letter was not contained in the appellate record, and it said that it would move to supplement the record with that letter. As of this date, the only record lodged relates to case number 450-673, and the state has not filed a motion to supplement the record. Case number 430-648 was the re-institution of case number 349-812 charging two counts of aggravated rape, two counts of aggravated burglary, and one count of aggravated crime against nature. After trial, Lewis was convicted and sentenced. His conviction and sentence was affirmed. State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, writ denied, 99-2694 (La.3/17/00), 756 So.2d 325. However, in 2001 the trial court granted Lewis a new trial. The state nolle prosequied the charges and reinstituted them in case number 430-648. On 22 February 2005 Lewis pleaded guilty to two counts of amended charges of forcible rape, and the other charges were nolle prosequied. The trial court stayed any action for Lewis' release during the appeal, and he objected to the stay order and filed a writ application in this court in case number 430-648. This court granted the writ and reversed the trial court’s ruling granting a stay of Lewis' release pending the state’s appeal. State v. Lewis, 2005-K-1046, unpub. (La.App. 4 Cir. 12/5/05).

. According to the transcript, the case is "Gote

. In its brief the state refers to a 22 April 2005 letter by defense counsel, who conceded that he had such discussions with Lewis. However, the state noted that the letter was *107 not part of the appellate record, and it has not filed a motion to supplement the record with the letter. The state did not attach a copy to its brief. Therefore, this court cannot consider it.